## SMITH v. SILVIO et al.
### No. 1394.

Court of Appeal of Louisiana. First Circuit.
Dec. 4, 1934.

Laycock & Moyse, of Baton Rouge, and Spearing & McClendon, of New Orleans, for appellants.

Jos. A. Loret and Ashton L. Stewart, both of Baton Rouge, for appellee.

LE BLANC, Judge.

This case was before this court once before on an appeal from a judgment sustaining an exception of vagueness to the plaintiff's petition. The judgment appealed from was reversed and set aside and the case remanded to be further tried according to law. (La. App.) 150 So. 38. On the remand, an answer was filed on behalf of both defendants, and, as a result of a trial on the merits, judgment was rendered in favor of the plaintiff and against both defendants, in solido, in the sum of $658. Both defendants have appealed suspensively, and their counsel, in brief, ask that we do not commit the same error as before, as that error was the direct cause of the improper judgment rendered in the lower court on the merits. We are at a loss to understand what counsel have in mind. Certainly had we felt that we had committed error in the judgment rendered by us, we would have rectified it on the application for rehearing which was strongly pressed by counsel. The record shows that the rehearing was refused, and the only conclusion can be is that counsel had not convinced us that we were in error. Besides, we fail to see how the error, if any, could be rectified on the present appeal, as the case was previously before us on appeal on a matter of pleading solely, and now it appears before us simply on questions of fact.

As stated in the judgment already rendered, the suit is one for damages arising out of a collision between two automobiles at an intersection of two streets in South Baton Rouge. Plaintiff was driving east on Adams street which runs east and west, and defendant was going south on Texas street which runs north and south. Neither street, as far as the record discloses, enjoys the right of way over the other. The basis of plaintiff's complaint is that he had entered the intersection first, thus pre-empting the right of way, and was well on his way across when the Silvio car came on into the intersection, at a rapid rate of speed, and ran into his car, causing the damage he seeks to recover. The defendants contend that the facts are exactly the reverse; that it was the Silvio car that pre-empted the right of way and it was the other car that came into the intersection at a very rapid speed, not less than forty-five miles an hour, and ran into the Silvio car thus causing the accident.

Joe Smith, who is a negro, testifies that he stopped his car before entering Texas street from the west. He says that he could not see around the corner toward the north, there being a house on the northwest corner, so he blew his horn and then started across the intersection. He is corroborated by his wife, who was in the car with him, to the extent that he stopped his car, and that they did not hear anything or see anything before he started into Texas street. Smith's brother, George, was also in the car, but he did not testify in the case, as it is shown that he was in the state of Mississippi at the time it was being tried. In the car with them also was their child, evidently too young to be used as a witness. Smith says that he was driving on his right-hand side of the street and that he was over halfway across the intersection when he saw the Silvio car a distance of about eighteen feet from his, and that he was almost across when he was struck. His wife says that the collision took place in about the center of the street. The left front wheel of the car was broken, the fender smashed under, and a hole was punctured in the left side of the radiator.

There is some testimony also that the bumper was pulled off.

Smith's wife says nothing about the speed of the Silvio car. Smith, however, whilst not committing himself to the speed in relation to miles per hour, says that "he sure was running fast." In connection with this point there is the testimony of a negro woman named Emma Simlin who testifies that she was standing in the back door of her house, in a position where she could see a car running on Texas street. Her house is at the corner of Adams and Tennessee streets, Tennessee being the street directly to the east of Texas. She says that she saw a car driving south on Texas street, going at a speed which she judges to have been between forty and forty-five miles an hour, and that directly after seeing this car she heard the report of the collision at the corner of Texas and Adams streets, which, of course, was the accident with which we are concerned. Silvio himself testifies that he had slowed down when he reached the intersection and was going about twenty-five miles an hour; hence it is not unreasonable to believe that he was going as fast, perhaps, as this negro woman estimates the speed of his car.

Two other negroes, Joe Rodney, and Sam Winfield, who claim to have seen the accident, testify that plaintiff was going "right fast" as he entered the intersection, and that it was his car that ran into the Silvio car. They both say, however, that Silvio was traveling fast also. The testimony of these two negroes, if believed, would leave but little doubt that plaintiff was equally, or more, to blame than Silvio for the accident. But it appears that both had given statements, under oath, to one of the attorneys for plaintiff, some time after the accident, both of which statements conflict with their testimony on the witness stand. If their testimony was worthy of belief, it is hard to understand how the district judge could have held the defendant Silvio liable, and therefore the conclusion seems inevitable that the judge did not believe them, and certainly he was in a better position than we are to have tested their credibility.

Silvio, on direct examination, states that "he got to the intersection first." We observe that he does not say that he "entered" first. On cross-examination, he says that he did not see the Smith car before it struck his. If he did not see it until then, obviously he cannot contradict plaintiff and his wife's testimony that plaintiff's car entered the intersection first. Moreover, in going over this part of his testimony, we find him making what seems to be a rather damaging admission. When asked why it was that he did not see the plaintiff's car before it was on him, his answer is that "it was too close; I thought I could beat him across. He just didn't stop." This does not impress us, as it must not have the district judge, as careful and prudent driving across an intersection when faced with the danger this defendant would have the court believe presented itself.

George Daigle, who was in Silvio's automobile, did not observe what happened before the collision took place. Asked if he looked for any cars at the intersection, he readily answers, "No sir, I was not driving." His testimony is of no value at all in establishing the important fact as to which of the two cars entered the intersection first.

Counsel for defendants stress the physical facts as shown by the point of impact on the respective cars to support their contention that plaintiff's car ran into the Silvio car. It is equally as probable, however, that the damage to both might have been caused by a glancing blow when one of the cars may have swerved around in an effort to avoid a collision. The physical facts, however, we do not hold to be as important as the testimony of the witnesses with regard to which of the cars had pre-empted the right of way by having entered the intersection first. On this point, we think that the preponderance favors the plaintiff's side of the case. We might add here that the law also seems to favor him, as section 20 of Act No. 296 of 1928, the statute which regulates automobile driving in this state, provides that, "when two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right." It is clear that, as Smith was going east and Silvio south, the vehicle in which Smith was driving was on the right of Silvio's and Silvio's was on the left, and, under this provision of the statute, it was Silvio's duty to yield on the right of way.

Several witnesses testify that, after the collision, Silvio stated to George Smith, plaintiff's brother, that he carried insurance, meaning, no doubt, liability insurance on his car, that would take care of plaintiff's hospital bill and the damage to his car. Silvio, of course, denies having made such statement, and Daigle says that, if he did, he did not hear it. Both admit that he was interested in seeing plaintiff taken to the hospital. During the afternoon of the day on which the accident happened, which was a Sunday, plaintiff's wife called at the home of Silvio to see

him with regard to the damage. To use Silvio's own words, "to see if I could pay," and he states further, "I told her I would see more about it." True, this is not an open admission of liability, but, if he was absolutely blameless, it strikes us that he would have been a bit more definite in dismissing the subject.

We have given careful consideration to the record in this case and have reached the conclusion that the decision is one which rests largely on the credibility of the witnesses. In such cases, of course, the appellate court attaches great weight to the opinion of the trial judge, and will yield thereto unless it is shown to be manifestly wrong. No manifest error has been pointed out in this instance, and we have found none to justify a reversal.

Plaintiff has filed an answer to the appeal asking for an increase in the amount awarded as damages. Defendant's counsel, on the other hand, contend that, if there is any liability, the award is excessive. We have reviewed the testimony on this question, and, believing that the amount allowed does substantial justice to both sides, have decided to let it remain as it is.

For the reasons stated, it is ordered that the judgment appealed from be, and the same is, hereby affirmed.